**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CHRISTINE MENSAH AYENU**, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **Civil No. RWT   06-CV-1434** |
| | * | |
| | * | |
| **CHEVY CHASE BANK, F.S.B.** | * | |
| | * | |
| Defendant. | * | |
| | ***** | |

**MEMORANDUM OPINION**

The case before the Court has a somewhat unusual procedural posture. Despite filing her complaint in this Court on June 8, 2006 based on federal question and diversity jurisdiction, 28 U.S.C. §§ 1331-1332, Plaintiff Christine Mensah Ayenu ("Ayenu") now requests that the Court dismiss the case without prejudice for lack of jurisdiction.  Defendant, Chevy Chase Bank, F.S.B. ("Bank"), has opposed this request and moved for summary judgment asserting that three of Ayenu's claims are preempted by the Maryland Commercial Code, and that she has failed to produce sufficient facts to support her two additional claims of misrepresentation. [Paper No. 32].  On April 23, 2007, the Court held a hearing on the jurisdictional issue, and the Bank's underlying motion for summary judgment.  For the reasons stated herein, the Court concludes that it lacks jurisdiction and accordingly will dismiss the case without prejudice by separate order.

**I.**

In her complaint, Ayenu sought declaratory and injunctive relief, and damages in connection with two allegedly unauthorized transactions in her account with the Bank on December 20, 2004 and

January 11, 2005. Ayenu claims that the Bank processed two wire transfers of approximately $7,500 and $4,500, respectively, that depleted nearly all of the money in her checking account, and that these transfers were made without her authorization. The Bank does not deny that it transferred the $12,076.00, but maintains that it acted in a commercially reasonable manner.

Magistrate Judge William Connelly presided over a hearing in this case on several discovery-related motions on January 24, 2007. During the hearing, Judge Connelly, on his own motion, raised the question of the jurisdiction of this Court, and directed the parties to address the issue. The parties submitted letter memoranda setting forth their respective positions [Paper Nos. 40 & 41]. At the direction of the undersigned, formal memoranda on the issue were filed by the parties [Paper Nos. 43 & 44], and a hearing was scheduled.

At the April 23, 2007 hearing, Ms. Ayenu testified and provided the Court with a detailed personal history. She was born in Ghana in 1930, and lived there and served in the Ghanian army until 1979. On January 7, 1980, she came to the United States and applied for citizenship, which she was granted. Ayenu returned to Ghana in 1996, as a retiree, but has remained a U.S. citizen. She possess a valid U.S. passport, which she renewed on March 29, 2006, over two months before she filed her complaint in this case. She has visited the U.S. Embassy in Accra, Ghana on several occasions, including to vote by proxy in the 2000 presidential election and to inquire about social security benefits, which she currently receives. Ayenu filed income tax returns for two years after she left the United States, in 1997 and 1998. After this time she has not filed federal income tax returns, but at the hearing she testified that she was not required to file a return because of her low income.

**II.**

**A.     Standard of Review**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the nonmoving party, here the Defendant, has the burden of demonstrating facts to support subject matter jurisdiction. Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991). In such situations, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citations omitted). The moving party, here the plaintiff, "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

**III.**

**A.     Ayenu's Claims Are Not Federal Questions.**

At the outset, the Court notes that Ayenu's claims are not federal questions. Although Ayenu's complaint invokes federal question jurisdiction by citing to the Uniform Commercial Code Article 4A, as adopted and incorporated by the Federal Reserve Board Regulation J, Subpart B, 12 C.F.R. § 210.55 *et seq.* (2002), this regulation does not confer jurisdiction on this Court because each of Ayenu's four claims arises under state law.[1] Because Ayenu's claims do not arise "under the Constitution, laws or treaties of the United States," this Court lacks federal question jurisdiction pursuant to 28 U.S.C. § 1331 (2006).

---

[1] Ayenu prays for declaratory and injunctive relief, and asserts claims for breach of contract, detrimental reliance/promissory estoppel, intentional misrepresentation and negligent misrepresentation. These are all state law claims.

**B.     There Is No Diversity Jurisdiction.**

Ayenu's complaint is also premised upon diversity jurisdiction pursuant to 28 U.S.C. § 1332 (2006).  However, diversity jurisdiction does not exist here for two reasons. First, because Ayenu lives abroad, she is not a citizen of *any* state, and thus she is not subject to diversity jurisdiction under § 1332. Second, as a U.S. citizen living abroad who has not renounced her U.S. citizenship, Ayenu does not qualify for alienage jurisdiction.

**1.     Ayenu Is Not a Citizen of *Any* State.**

Title 28, § 1332(a)(1) of the United States Code confers jurisdiction on this Court for cases involving diverse parties. Chevy Chase Bank is a Maryland corporation with its principal place of business in Maryland, and is therefore a citizen of Maryland under the diversity statute. 28 U.S.C. § 1332(c)(1).  However, as a U.S. citizen living abroad, Ayenu is not a citizen of *any* state because she is not domiciled in the United States.  Thus she is barred from invoking diversity jurisdiction in the federal courts. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989)("[i]n order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State").  Ayenu is free, of course, to file her claim in state court, but she cannot have her claims heard here.  Because she possess no state citizenship, this Court does not have diversity jurisdiction over her case.

**2. Ayenu Cannot Qualify for "Alienage Jurisdiction" Because She Is a U.S. Citizen and Has Not Renounced Her American Citizenship.**

The Bank asserts that this Court has diversity jurisdiction through alienage jurisdiction

because Ayenu is a naturalized American citizen living abroad. The Seventh Circuit,[2] relying in large part upon the text of 28 U.S.C. §1332, has stated that "[t]he generally accepted test for determining whether a person is a foreign citizen for purposes of 28 U.S.C. §1332(a)(2) is whether the country in which citizenship is claimed would so recognize him. This is in accord with the principles of international law that it is the inherent right of every independent nation to determine for itself, and according to its own constitution and laws, what classes of persons shall be entitled to its citizenship." Sadat v. Mertes, 615 F.2d 1176, 1183 (7th Cir. 1980). The Sadat court further held that the general rule is to look only at the U.S. citizenship in the case of a dual national, but recognized an exception in situations where a litigant proved to be predominantly the citizen of a country other than the United States. Id. at 1187.[3] This exception would apply only where a two-part test was satisfied: (1) the litigant's dominant nationality, by reason of residence or other association, is that of another country, and (2) the litigant had manifested an intention to be a national of the other state and has taken all reasonably practicable steps to avoid or terminate his status as a national of the United States. Id. (citing Restatement (Second) of the Foreign Relations Law of the United States).

Although the Bank has tried to portray Ayenu as a dual citizen, the facts presented to the Court at the April 23, 2007 hearing demonstrate that she is not a Ghanian citizen or a dual citizen.

---

[2] This issue is one of first impression in the Fourth Circuit. The Court is therefore guided by the precedent from sister circuits, and in particular, the Seventh Circuit as it is one of the few federal appellate courts to have issued a detailed opinion on alienage jurisdiction. See Sadat v. Mertes, 615 F.2d 1176 (7th Cir. 1980).

[3] This exception has been criticized by some courts considering this issue. See e.g., Gefen by Gefen v. Upjohn, 893 F. Supp. 471, 473 (E.D. Pa. 1995)(stating conclusively that Americans with dual citizenship are U.S. citizens and therefore not considered citizen of a foreign state for diversity jurisdiction purposes); see also 13B Wright & Miller, Federal Practice & Procedure, §3621. Where this exception has been applied, the result has been to find that dual citizens ought to be considered American citizens for purposes of diversity jurisdiction, and not citizens of foreign states. Nazareth Candy Co., Ltd. v. Sherwood Group, Inc., 683 F. Supp. 539, 541-42 (M.D.N.C. 1998).

She is simply a U.S. citizen living in Ghana. Applying the general rule announced in <u>Sadat</u> and subsequent cases, Ayenu, as a U.S. citizen, is not "a subject of a foreign state" and thus there is no diversity under § 1332(a). <u>Id.</u> at 1187; <u>Gefen by Gefen</u>, 893 F. Supp. at 473.

Furthermore, the two-part exception under <u>Sadat</u> does not apply to Ayenu's case. Although the first prong of the <u>Sadat</u> test is satisfied because Ayenu lives in Ghana, she has not "manifested an intention to be a national of [an]other state," and has not "taken all reasonably practicable steps to avoid or terminate [her] status as a national of the United States." <u>Sadat</u>, 615 F.2d at 1187; <u>Soghanalian v. Soghanalian,</u> 693 F.Supp.1091, 1094-95 ( S.D.Fla.1988). The facts presented at the hearing indicate just the opposite; Ayenu's testimony reveals that she is very proud to be an American citizen. She stated at the hearing, "Your honor, I'm very, very proud to be an American, and I've kept in touch with everything. I'm proud." Transcript at 7:13-15. Later in the hearing, the following exchange took place between Ayenu and her attorney during direct examination:

> MR. ETOKEBE: Did you ask anybody at the embassy that you wanted to give up your United States citizenship?
>
> AYENU: Your Honor, me lose my United States citizenship? No way, sir. . . . I am very much American. I cannot renounce it. . . . I am still an American citizen, no matter where I live.

Transcript at 11: 5-21.

Although not explicitly stated in its papers, at the hearing the Bank suggested that the Court ignore <u>Sadat</u> and its two-part "dominant nationality" exception, and instead balance a variety of factors to determine the predominant nationality of the litigant. Under its proposed approach, the Bank asserts that the Court should consider Ayenu a Ghanian citizen because she was a member of the Ghanian army before immigrating to this country, and because she currently receives health care benefits from the Ghanian military. The Bank further argued that by returning to Ghana in her

retirement, Ayenu had somehow manifested an intent to become Ghanian once again. To support its view, the Bank noted that Ayenu had not voted in the 2004 presidential election.

The Court rejects the Bank's approach for three reasons. First, under Sadat, these facts are of no moment. Ayenu's prior military service in no way impacts her status as a U.S. citizen. Indeed the plaintiff in Sadat also had served in the military of a foreign country (Egypt in Sadat's case), and the Seventh Circuit was not swayed by this fact in concluding that he was a U.S. citizen. Id. at 1183-84. The Sadat exception, whereby this Court might consider a U.S. citizen a foreigner for diversity jurisdiction purposes, only applies where that citizen "has manifested an intention to be a national of the other state and has taken all reasonably practicable steps to avoid or terminate his status as a national of the [United States]." Id. at 1187.

The facts reveal that that is clearly not the case here.  Ayenu possess a valid U.S. passport on which she travels.[4] She has emphatically stated her pride in being an American, and voted via proxy in the 2000 presidential election.  At the hearing she was even able to identify the candidates in that election by name.  She also stated that she paid federal income taxes from Ghana when she had taxable income, and that she is currently receiving social security benefits from this country.  The Court observed Ayenu's testimony and finds it to be genuine, sincere and credible.  Her pride in being an American was obvious.  The Court thus concludes that the evidence is overwhelming  that Ayenu has no intention of renouncing her U.S. citizenship, and thus she does not fall within the Sadat exception.

Second, the Court finds the Bank's arguments troublesome, because it essentially asks this

---

[4] Some courts to consider similar cases have found possession of a valid U.S. passport sufficient proof that a litigant living abroad should be considered an American citizen. Kerry v. American Airlines, Inc., 962 F. Supp. 264, 266 (D.P.R. 1997).

Court to strip Ayenu of her U.S. citizenship simply because she has decided to live abroad for her retirement, something that this Court is not inclined to do, not is it a conclusion that the law compels. Third, the Bank is unable to cite to a single court that has adopted its analysis for alienage jurisdiction purposes.[5]

Because Ayenu clearly has <u>not</u> "taken all reasonably practicable steps to avoid or terminate [her] status as a national of the United States," the Court cannot treat her like a foreign national. <u>Sadat</u>, 615 F. Supp. at 1187. <u>Coury v. Prot</u>, 85 F.3d 233, 250 (5th Cir. 1996), <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 507 (2d Cir. 1991); <u>see</u> <u>also</u> 13B Wright & Miller, Federal Practice & Procedure, §3621. Given Ayenu's clearly demonstrated status as a U.S. citizen living abroad, there is no alienage jurisdiction in this case pursuant to 28 U.S.C. §1332(a)(2).

## IV.

There is a well-recognized presumption against subject matter jurisdiction. <u>Coury v. Prot</u>, 85 F.3d 244, 248 (5th Cir. 1996).   The party bringing an action must rebut this presumption to have her case heard in federal court. <u>Id.</u>  Here, the Plaintiff herself has admitted a lack of subject matter jurisdiction and the Defendant bank has not overcome this presumption. Chief Justice Marshall famously cautioned: "[i]t is most true that this Court will not take jurisdiction if it should not; We have no [] right to . . . usurp that which is not given." <u>Cohens v. Virginia</u>, 6 Wheat. 264, 404 (1821).  Because this Court concludes that it lacks jurisdiction, it will not

---

[5]The one case that supported the Bank's position was the decision of a Magistrate Judge of the District Court for the District of Puerto Rico. <u>Bournigal-Mena v. Amador</u>, 1994 U.S. Dist. LEXIS 13168. However, that case was reversed by the District Court judge reviewing the case.  The District Court in <u>Bournigal-Mena</u> determined that there was no diversity jurisdiction, and specifically concluded that the <u>Sadat</u> "dominant nationality" exception did not apply. <u>Bournigal-Mena v. Amador</u>, 1995 WL 58036 (D.P.R., Jan. 12 1995)(concluding that the <u>Sadat</u> "dominant nationality" exception did not apply to the case and thus diversity was lacking).

address the merits of the Bank's Motion for Summary Judgment. Accordingly, the Court will, by separate order, dismiss this case without prejudice for lack of jurisdiction.[6]


July 31, 2007 /s/
DATE ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[6] Under Maryland Rule 2-101(b)(3), if Ayenu re-files her case in the Maryland state court system within 30 days of the date of this opinion and accompanying order, the date of commencement of the state action will relate back to the date of commencement of the federal action for time limitation purposes.